# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL SEMPRINI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DAVID H. NAOUR, )<br>)<br>Defendant. ) | Case No. 04-1066 |
| _____ | |
| MICHAEL SEMPRINI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OSF HEALTHCARE SYSTEM, JEAN )<br>DORNFIELD-FINKE, and BLOOMINGTON )<br>MEDICAL LABORATORY PHYSICIANS, )<br>S.C., )<br>)<br>Defendants. ) | Case No. 04-1195 |

## O R D E R

This matter is now before the Court on several Motions in Limine by the parties. Each motion will be addressed in turn below.

### DISCUSSION

I.  Plaintiff's Motion in Limine

Plaintiff has filed a twelve-part Motion in Limine addressing various concerns. Defendants pose the general objection that the motion should be denied in its entirety

because it is unaccompanied by a memorandum of law, and Defendants disagree with Plaintiff regarding the applicability of some of the precedent cited. This general objection is overruled.

Defendants next pose specific objections only with respect to three of the 12 subparts. As Defendants have stated no specific objection, the Motion will be granted with respect to subparts 1, 2, 4, 5, 6, 8, 9, 10, and 12.

In subpart 3, Plaintiff asks that the Defendant's children not be allowed to sit in on the trial watching their father. Defendant objects that the case law cited does not support any such proposition, and asks that in the event that family members are present at trial, they be allowed to be seated in the gallery with the other spectators. The Court agrees with Defendants. The courtroom is a public place, and this trial will be open to the public. As long as any family members that are present are not witnesses, the Court has been presented with no just reason why they cannot observe the trial proceedings from the gallery with any other spectators. Subpart 3 of Plaintiff's Motion in Limine is therefore denied.

Subpart 7 seeks a ruling that Defendants not be allowed to argue or suggest that the plaintiff has asked for or has suggested that the plaintiff be awarded a greater sum of money than plaintiff actually expects to be awarded. Precisely what is meant by this request is somewhat unclear. If Plaintiff is referring to a demand or settlement negotiations, the Court would certainly agree. However, it would appear from Defendants' response that they have no intention of making that kind of argument. Rather it would appear that they do intend to suggest that the damages sought by Plaintiff are grossly exaggerated. To the extent that Plaintiff is asking the Court to issue a blanket order prior

to trial that precludes any argument criticizing the amount of damages requested or suggesting that his requested damages are excessive or overinflated, his request cannot be granted in limine. Accordingly, subpart 7 of his Motion in Limine is denied.

In subpart 11, Plaintiff asks the Court to prevent Defendants from peremptorily challenging any prospective juror who is African-American. With all due respect, it is unreasonable to ask the Court to assume prior to trial that Defendants are going to exercise peremptory challenges in an unlawful and discriminatory manner. Furthermore, a motion in limine is not the appropriate procedural mechanism for addressing this concern. If and when this situation should arise at trial, it should be addressed by a timely objection and the procedural process set forth in Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny. Plaintiff's request in limine is therefore denied.

II.     Defendant Naour's Motions in Limine

Naour's Motion in Limine No. I also has 12 discrete subparts. Plaintiff has indicated that he has no objection to subparts 1, 2, 3, 4, 5, 6, 7, 10, and 11, and the Motion will therefore be granted with respect to these requests.

Subpart 8 asks that Plaintiff be barred from presenting any evidence regarding opinion testimony other than those opinions that were properly disclosed pursuant to Supreme Court Rule 213.[1] Plaintiff objects to the application of Rule 213 but otherwise makes no substantive response. Common sense dictates that neither party should be allowed to present undisclosed opinion testimony without first obtaining permission from the Court outside the presence of the jury, and the motion will be granted to that extent.

---

[1] The Court notes parenthetically that Defendants' repeated references to Illinois Supreme Court rules are misplaced in this diversity action.

In subpart 9, Naour seeks a ruling precluding Plaintiff from introducing any evidence that other doctors would have acted differently than he did in this case, citing <u>Thomas v. University of Chicago Lying-in Hospital</u>, 221 Ill.App.3d 919, 583 N.E.2d 73 (1st Dist. 1991). However, the Court reads that case somewhat differently. In <u>Thomas</u>, the court held:

> In order to establish a *prima facie* case, a plaintiff must introduce more than the mere presentation of testimony from another physician who would have acted differently. <u>Stevenson v. Nauton</u> (1979), 71 Ill.App.3d 831, 28 Ill.Dec. 71, 390 N.E.2d 53.) Plaintiff is required to present evidence to show that the doctor deviated from established procedures.

221 Ill.App.3d at 925. Thus, the case stands for the proposition that the presentation of testimony from another physician who would have acted differently is not sufficient to establish the claim, not that such testimony is not to be permitted at all. Subpart 9 of Naour's Motion in Limine is therefore denied.

Subpart 12 requests that Plaintiff be prohibited from presenting any evidence or testimony that his damages are worth a certain amount per day, per month, or per year for the rest of his life, as the use of a mathematical formula based upon a specific sum per day or other fixed unit in time is improper. While Defendants are certainly free to cross-examine any such testimony or criticize any such argument that may be made, the parties do not cite, and the Court is otherwise unaware of, any binding precedent compelling a blanket preclusion of the application of mathematical formulas in the calculation of damages at trial. This aspect of the Motion is therefore denied.

Plaintiff has no objection to Naour's Motion in Limine No. II, and it will therefore be granted.

Naour's Motion in Limine No. III is essentially the same as subpart 8 of his Motion in Limine No. I. As such, the same ruling applies and the Motion will be granted to the extent that neither party will be allowed to present undisclosed opinion testimony without first obtaining permission from the Court outside the presence of the jury.

Without identifying any lay witnesses in this case whose testimony has been determined to be problematic, Motion in Limine No. IV asks the Court to bar lay witness testimony criticizing the medical care and treatment rendered to Plaintiff. Naour cites Sullivan v. Edward Hospital, 209 Ill.2d 100 (Ill. 2004), and other case in arguing that any such testimony addressing the standard of care must be presented by an expert where the negligence is not so grossly apparent as to fall within the everyday knowledge of a lay person. Plaintiff responds that he does not know which witnesses are being referred to in Naour's motion. He then argues that lay opinion testimony in this case is governed by Federal Rule of Evidence 701, which provides a somewhat different standard, and any such testimony must be examined on a case-by-case basis at trial to determine whether a proper foundation has been laid. As there has been no specific objection to the testimony of any specific witness, the Court cannot enter the vague, broad prohibition sought, and the Motion will be denied. Counsel is, of course, free to raise any specific objections at trial.

Motion in Limine No. V seeks a ruling barring the testimony of treating or non-treating physicians or other witnesses that have not been previously disclosed pursuant to Supreme Court Rule 213.[2] As this is essentially another iteration of subpart 8 of Motion in Limine No. I and Motion in Limine No. III, the same ruling applies, and the Motion is granted

---

[2] Again, Defendants' reliance on Illinois Supreme Court Rules is misplaced.

to the extent previously discussed. To be clear, the Court has not issued an absolute ban on the testimony of witnesses that were not technically disclosed in compliance with Rule 213. Rather, the Court has simply required that before presenting testimony that was not disclosed under Rule 213, any party must first raise the issue outside the presence of the jury and obtain the Court's permission to present it. Even in the case of rebuttal testimony, this requirement is not unreasonable.

In his Motion in Limine No. VI, Naour cites Illinois caselaw and asks that Plaintiff be prohibited from using medical treatises, textbooks, articles or other literature as substantive evidence during his prima facie case or from using such works in cross-examination that have not been established as authoritative. Respectfully, Rules 703 and 705 of the Federal Rules of Evidence govern the disclosure of facts or data underlying expert opinion and will be applied in this case. Naour is free to make any appropriate objection at trial regarding Plaintiff's satisfaction of the requirements set forth in these rules, but the Motion before the Court cannot be granted at this time.

In Motion in Limine VII, Defendants request that Plaintiff be prohibited from presenting evidence or testimony to the effect that Defendants failed to comply with the "gold standard" in his examination, care, and treatment as the standard of care against which a physician's conduct is measured is not the highest degree of skill possible but the reasonable skill that a physician in good standing in the community would use in similar cases and circumstances. Defendants contend that presenting the jury with evidence of a "gold standard" would attempt to hold them to a higher standard than required by law and has the potential to confuse or affirmatively mislead the jury. Plaintiff responds that none of the cases cited by Defendants forbid the use of the term "gold standard," but this

response misses the point. Presenting the jury with evidence of a higher standard of care than what is required by the law is unnecessarily confusing and has the very real potential to mislead the jury. Accordingly, Defendants Motion in Limine VII is granted.

Motion in Limine VIII is a motion to bar the introduction of three photographs taken of Plaintiff after his surgery by Dr. Naour and other physicians. Defendants argue that these photographs are highly prejudicial and have no probative value, as his post-operative condition would have been the same even if the surgery had been performed earlier as contended by the Plaintiff. Plaintiff responds that his condition was aggravated by the negligence of Dr. Naour during the first surgery and that this is what necessitated the subsequent surgical procedures performed by other physicians. Absent the negligence, it is Plaintiff's contention that he would not have suffered the sequela that are demonstrated by the photographs. The Court agrees with Plaintiff, at least at this stage of the litigation, and denies the blanket prohibition sought by the Defendants. Defendants are free to make specific objections to the specific photos at trial, and Plaintiff shall give Defendants notice of when he intends to use these photographs at trial, so that any objection may be heard outside the presence of the jury.

In Motion in Limine IX, Defendants ask the Court to preclude Plaintiff from offering evidence or testimony implying that the jury should render a verdict in favor of the Plaintiff to send a message or otherwise deter future incidents of negligent conduct. As Plaintiff has alleged only compensatory damages, and not punitive damages, and punitive damages are not allowed under Illinois law in healing art malpractice cases, Defendants asserts that such argument would be improper, and the Court agrees. Defendants' Motion in Limine IX is therefore granted.

Plaintiff has indicated that he does not oppose the request set forth in Motion in Limine X. Accordingly, it will be granted.

Motion in Limine XI seeks a ruling prohibiting Plaintiff's experts from testifying as to what they would personally do in any given medical situation as such testimony is irrelevant to any issue in this case. Specifically, Defendants argue that Plaintiff's experts should be confined to opinions pertaining to the applicable standard of care, whether there was a breach thereof, and whether said breach caused the claimed injury to Plaintiff in this case. Plaintiff contends that Defendants have confused that standard of care with a witness' credibility and the bases of the witness' testimony. Again, Plaintiff misses the point that a witness will not be allowed to present testimony that will at best confuse, and at worst affirmatively mislead, the jury as to the relevant standard of care. This is the same situation as addressed with respect to the "gold standard" testimony in Motion in Limine VII and warrants the same ruling. Testimony from the experts regarding what they personally would have done in the given situation has the potential to mislead the jury by suggesting a higher standard of care required by the law and will not be permitted. Motion in Limine XI is granted.

In Defendants' Motion in Limine XII, they move to preclude any testimony regarding injuries sustained by the Plaintiff which have not been substantiated by expert testimony. However, Defendants make no attempt to identify any witness that they have reason to believe will present such testimony or what particular injuries have been identified in discovery but have not been substantiated by expert testimony. While Plaintiff will certainly be held to his burden of proof, Defendants' motion is overly broad and non-specific and cannot be granted at this time without proper context. Rather, Defendants will need to

make specific objections at trial if and when Plaintiff attempts to introduce evidence that Defendants believe is inappropriate.

Motion in Limine XIII is directed to the relevance of the removal of a carcinoid tumor during the laproscopic appendectomy that was performed on the Plaintiff in this case. Specifically, Defendants contend that the removal of the tumor was inadvertent and that there is no evidence finding that the tumor is proximately related to the material issues of the case or is of consequence to the determination of this action. Thus, they argue that the removal of the tumor is irrelevant and that reference to this information would be unfairly prejudicial. Plaintiff responds that this information is indeed probative, as the presence of the tumor was a red flag to Defendant Dornfeld-Finke that Dr. Naour had compromised the small intestine during the appendectomy. Plaintiff further contends that the way Dr. Naour handled the carcinoid tumor in his second operative report is relevant to his credibility, as it purportedly supports the inference that he lied in preparing the report in order to cover up his mistake. As the Court cannot find at this stage of the proceedings that evidence concerning the carcinoid tumor is irrelevant or that the probative value of such evidence is so slight that it is outweighed by the danger of unfair prejudice, Defendants' Motion in Limine XIII must be denied.

III.  Defendant Dornfeld-Finke's Motion in Limine

Defendant Dornfeld-Finke and Bloomington Medical Laboratory Physicians have filed an Omnibus Motion in Limine containing nine separate subparts. Each subpart will be addressed in turn.

In subparts I, II, and III, these Defendants have moved to preclude evidence regarding the existence of professional liability insurance, the income of the parties, and

any other malpractice claims or actions. Plaintiff concedes that any such evidence would not be proper, and the Motion is therefore granted with respect to subparts I, II, and III.

Subpart IV seeks to bar opinion testimony by lay witnesses. Like the similar motion by Dr. Naour, these Defendants make no effort to identify any witness that they have reason to believe will present such testimony or what testimony has been identified in discovery as problematic. While Plaintiff will certainly be held to his burden of proof, and the proper standards will be enforced, Defendants' motion is overly broad and non-specific and cannot be granted at this time without proper context. Rather, Defendants will need to make specific objections at trial if and when Plaintiff attempts to introduce evidence that Defendants believe is inappropriate.

In subpart V, these Defendants request that the allegations of negligence against them be limited to: (1) Defendant Dornfeld-Finke should have made a telephone call to Dr. Naour on June 24, 2002, and June 25, 2002, to advise him of her pathology findings and (2) she should have documented her telephone calls. In support of this motion, they cite testimony by Plaintiff's expert that he found fault with her failure to communicate with the surgeon in a timely fashion but did not disagree with her diagnosis or with the timeframes in which she prepared and examined the pathology specimen. Plaintiff objects that Defendants have selected portions of the expert's deposition while ignoring others. However, after reading the portions of the deposition cited by Plaintiff, the only additional area of criticism that Dr. Frist identifies as having actually been relevant in this case is with respect to her documentation of her examination process and the pathology results. Any criticism of her process of prioritizing the specimens for review was admitted to have had no impact on this case and is therefore irrelevant. Accordingly, this subpart is denied with

respect to the witness' additional criticisms of Dr. Dornfeld-Finke's documentation of her examination process and pathology process, and granted in all other respects.

Defendants' subpart VI moves to preclude any evidence regarding JCAHO standards, as JCAHO standards apply to the hospital itself, and the hospital is no longer a defendant in this case. Additionally, Defendants argue that there has been no qualified witness testimony to establish that any of the currently named Defendants deviated from any JCAHO standards that might be applicable to them. Plaintiff states, without any citation to authority, that JCAHO standards "apply not only to hospitals but to the activities of health care providers that are rendered in hospitals" and does not address the objection that no competent witness has been identified who can establish that the standards are applicable to Defendants or that their conduct violated an applicable standard. Accordingly, Defendants' request will be granted in that Plaintiff will not be allowed to make any reference to the JCAHO standards unless and until he has presented an offer of proof outside the presence of the jury and satisfied the Court that the standards are applicable and that he has a competent witness to present such testimony.

Subpart VII asks for an order prohibiting any evidence concerning the treatment that Plaintiff received in Arizona following his discharge from OSF St. Joseph Medical Center in August 2002 in an attempt to relate this treatment to the alleged negligence by the Defendants in this case. Defendants assert that there has been no qualified witness testimony establishing that any of the care and treatment that he received in Arizona was necessitated by the alleged negligence or that he sustained injuries as a result of the alleged negligence for which treatment in Arizona was required. Plaintiff cites the depositions of Dr. Frist, Dr. Williams, Dr. Tahir, and Dr. Goud as evidence of qualified

expert testimony regarding the Arizona medical care. The portions of the deposition of Dr. Frist do not address the care and treatment provided in Arizona at all, much less establish any causal connection between the care he received from Defendants and the care he received in Arizona. Dr. Williams and Dr. Tahir do reference the care received by Plaintiff in Arizona, but neither makes any attempt to address causation or that the treatment received in Arizona was necessitated by the Defendants' negligence in treating the Plaintiff in Bloomington. Dr. Goud was specifically asked if he could identify the cause of Plaintiff's sepsis in September 2002, and he stated that he could not. Dr. Goud did testify to a reasonable degree of medical certainty that Plaintiff had cholecystitis, but again, the causal link to the negligence at issue in this case is conspicuously absent, as Dr. Goud denied that the most probable cause of the cholecystitis was either a prolonged course of TPN or a staphylococcus negative infection. The only suggestion of causation is with respect to the staphylococcus negative infection, to which Dr. Goud testified to a reasonable degree of medical certainty that it could have been caused by either Plaintiff's catheter or his open wound.

As it is Plaintiff's duty to direct the Court to appropriate citations in support of his position, the Court did not root through the depositions of these four physicians in search of other opinions of causation that may be present in the voluminous transcripts provided. Accordingly, the best ruling that the Court can make at this time is that Defendants' motion will be denied with respect to evidence concerning the staphylococcus negative infection, for which there is some expert testimony regarding causation, and granted with respect to the remainder of the Arizona care and treatment unless and until Plaintiff can make an offer of proof outside the presence of the jury establishing the requisite causation.

In subpart VIII, these Defendants request that certain anticipated testimony from Donald Blank ("Blank"), a licensed pharmacist who is a friend of Plaintiff's, be barred as inadmissible hearsay. Specifically, Blank spoke with Dr. Naour, who made the statement that "if Mr. Semprini was not in as exceptional a shape as he was before this surgery that he would not be alive." Plaintiff responds that this is an admission by a party opponent, and the Court agrees. Defendants also object to any attempt to offer Blank's testimony about conversations that he had with Annette Schneider, a nurse at OSF St. Joseph Medical Center to the effect that she was concerned enough about Plaintiff's lack of improvement after his first surgery that she called back from out of town to talk to Dr. Naour about it. Plaintiff makes no response to this portion of the motion, essentially conceding that any such testimony would be hearsay for which he can offer no exception. Finally, Defendants oppose any testimony from Blank regarding the purpose for which the prescription drug Xigris was administered to Plaintiff, as such testimony would not be proper lay testimony but rather would constitute undisclosed expert testimony since Blank would be speaking based on his specialized knowledge and skill as a pharmacist. Plaintiff responds only that Blank is a licensed pharmacist who "is familiar with the package insert in regard thereto and is knowledgeable to express opinions concerning prescription drugs including Xigris." He fails to acknowledge the limitation in Rule 701 that if a witness is not testifying as an expert, "the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." As the referenced testimony by Blank is clearly based on his technical and specialized knowledge as a pharmacist, it cannot be allowed in the form offered by Plaintiff.

Finally, subpart IX seeks to preclude certain anticipated testimony by Brian Frist, M.D. that in his opinion, Defendant Dornfeld-Finke did not call Dr. Naour to report her pathology findings.  As Defendant Dornfeld-Finke has testified that she would have called Dr. Naour, because it was her custom and practice to do so, such testimony by Dr. Frist is argued to constitute an impermissible expert opinion as to her credibility.  Plaintiff responds that he has no intention of asking Dr. Frist to testify as to whether the call was or was not made, but rather only that the standard of care required that such a call be made and documented.  Accordingly, the motion is effectively moot.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion in Limine [#122 in Case No. 04-1066 and #54 in Case No. 04-1195] is GRANTED IN PART and DENIED IN PART.  Defendant's Motion in Limine No. I [#109] is GRANTED IN PART and DENIED IN PART.  Defendant's Motion in Limine No. II [#110] is GRANTED.  Defendant's Motion in Limine No. III [#111] is GRANTED.   Defendant's Motion in Limine No. IV [#112] is DENIED.  Defendant's Motion in Limine No. V [#113] is GRANTED.  Defendant's Motion in Limine No. VI [#114] is DENIED.   Defendant's Motion in Limine No. VII [#115] is GRANTED.  Defendant's Motion in Limine No. VIII [#116] is DENIED.  Defendant's Motion in Limine No. IX [#117] is GRANTED.   Defendant's Motion in Limine No. X [#118] is GRANTED.  Defendant's Motion in Limine No. XI [#119] is GRANTED.  Defendant's Motion in Limine No. XII [#120] is DENIED.  Defendant's Motion in Limine No. XIII [#126] is DENIED, and

Defendant's Omnibus Motion in Limine [#123 in Case No. 04-1066 and #55 in Case No. 05-1195] is GRANTED IN PART, DENIED IN PART, and MOOT IN PART.

ENTERED this 16th day of January, 2007.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge